Laramoee, Judge,
dissenting:
I believe in this case it is by no means clear that plaintiff is entitled to title II retirement pay as prayed for in the petition. To qualify him for title II retirement pay he must be credited for double time spent in the Philippines. This time was enlisted service as a Marine.
Plaintiff contends that the provisions of 10 U.S.C. § 956 (1952) apply in determining the eligibility of a Regular or Reserve officer for retirement under 10 U.S.C. § 943a (1952). 10 U.S.C. § 956 provides:
§ 956. Double ceedits eor eoreigN service bt eNlisted MEN.
In computing length of service for retirement, credit shall be given soldiers for double the time of their actual service in China, Puerto Rico, Cuba, the Philippine Islands, the Island of Guam, Alaska, and Panama, but double credit shall not be given for service rendered subsequent to April 23, 1904, in Puerto Rico or the Territory of Hawaii, nor shall credit for double time for foreign service be given to those who enlisted after August 24, 1912: Provided, That nothing herein shall be so construed as to forfeit credit for double time accrued prior to August 24,1912.
It is noted that the above statute provides for crediting of certain foreign service as double time in computing the eligibility of soldiers for longevity retirement. This does not mean, as will be later demonstrated, that the provisions of the above statute apply to a Regular or a Reserve officer seeking retirement as an officer under the provisions of a statute relating specifically to the retirement of officers.
The first statute providing credit for double time of an enlisted man’s service was the Act of September 30,1890, 26 *76 Stat. 504. This statute clearly provides credit for double time for service only in the case of enlisted men.
Tbe Act of May 26,1900, supra, was amended by the Act of March 2,1903, 32 Stat. 933. The amending language also is confined to soldiers (enlisted men) after 30 years’ service.
The Act of May 26, 1900, supra, was further amended by the Act of April 23, 1904, 33 Stat. 264. The amending language provides credit for double time for enlisted service only.
A further amendment of the Act of May 26, 1900, supra, was accomplished by the Act of August 24, 1912, 37 Stat. 575. Again, the amendment embraces only enlisted men after 30 years’ service.
Thus no provision is cited or can be found in the Act upon which plaintiff relies, or any other act, that allows the computing of double time for foreign service except for purposes of 30-year retirement of enlisted men.
That the term “soldiers” can only mean enlisted men is clear. The Articles of War in effect at all times herein material, defined the word “soldiers” to mean an enlisted man.
Section 1342 of the Revised Statutes (1878) provides:
Tire armies of the United States shall be governed by the following rules and articles. The word officer, as used therein, shall be understood to designate commissioned officers; the word soldier shall be understood to include non-commissioned officers, musicians, artificers, and privates, and other enlisted men, and the convictions mentioned therein shall be understood to be convictions by court-martial.
The use of the word “soldiers” to distinguish a commissioned officer from an enlisted man was continued in the Articles of War until superseded by the Uniform Code of Military Justice, 64 Stat. 107. The present Articles of War, 62 Stat. 627, also defines “soldiers” as including a non-commissioned officer, a private, or any other enlisted man.
Later statutes authorized the retirement of enlisted men with less than 30 years of service, the first being the Act of June 30, 1941, 55 Stat. 394. The very wording of the Act only extends the same credit in computing time necessary for retirement as an enlisted man only.
*77 The Act under which plaintiff claims, 10 U.S.C. §§ 943a, 97lb (1952), specifically provides for the voluntary retirement of officers and does not provide for the crediting of any service of eligible officers as double time.
Thus the conclusion is inescapable that Congress never intended to extend double time credit in determining eligibility of an officer for voluntary retirement. Plaintiff is seeking retirement under the provisions of a statute relating specifically to the retirement of officers and cannot claim the benefit of the provisions of an act relating only to enlisted men.
The case of Whitaker v. United States, 134 Ct. Cl. 245, is clearly distinguishable since Whitaker was claiming Title III entitlement, whereas plaintiff Carver is claiming entitlement under Title II of the 1948 Act, supra, relating specifically to the retirement of only Regular Army and Reserve officers. Title III provided limited retirement for any member of a Reserve component who qualified thereunder, whether an officer or an enlisted man, and plaintiff has not only qualified under that statute but is receiving retirement pay thereunder.
This leaves, in light of the above, the question of whether plaintiff’s active enlisted service performed subsequent to the date of plaintiff’s qualification for retirement is creditable in the computation of his retirement pay under the provisions of Title III of Public Law 810, supra.
The argument of defendant in respect to credit for Regular Army service performed subsequent to the date he became eligible for Title III retirement in the computation of his retirement pay, calls for statutory interpretation. Section 302(e) of the Act of June 29,1948, now codified in 10 U.S.C. § 676, under which plaintiff is seeking credit for service subsequent to date of qualification for retirement, provides:
§ 676. RETENTION AETER BECOMING QUADIFEED FOR RETIRED PAX.
Any person who has qualified for retired pay under chapter 67 of this title may, with his consent and by order of the Secretary concerned, be retained on active duty, or in service in a reserve component other than that listed in section 1332(b) of this title. A member so retained shall be credited with that service for all purposes.
*78 It is the defendant’s contention that having qualified for retirement as of June 29,1948, credit for service subsequently can only be given in accordance with the provisions of the above statute. Defendant further contends that section 676 has application only to active duty in a Reserve status and cites the opinion of the Comptroller General in support of its contention. 38 Comp. Gen. 647. This opinion is to the effect that a member qualified for retirement under Title III of the Act of June 29, 1948, supra, is not entitled to any retired pay credit for service as an enlisted man in a Regular component, performed after qualification for Title III retired pay. While not explicitly stated, defendant’s reasoning apparently is that Title III pertains only to retirement of non-regulars. With this reasoning we must agree. Title III is replete with reference only to non-regulars. For example, section 302(a) of the Act of June 29, 1948, supra, has the proviso that for entitlement to such retired pay, the last eight years of qualifying service must have been as a member of a Reserve component. In fact, all of the language of section 302 deals with service in a “reserve component.”
The language used in the codification of the pertinent section, 10 U.S.C. § 676, differs somewhat from the language of the original statute. In section 302(e) of the original Act, the post qualification service was termed “Federal service” rather than “active duty or in service in a reserve component” as contained in the codification. Thus, for the purpose of Title III, the term “Federal service” pertained only to service in a non-regular component. Furthermore, the term “* * * credited with that service for all purposes” is not the language of the original Act. The language of the original Act was “* * * credited with equivalent periods of Federal service for the performance of such duties.”
The Historical and Revision Notes following section 676 are as follows:
The words “active duty, or in service, in a reserve component other than that listed in section 1332(b) of this title” are inserted to reflect the words “Federal service”, as used in Title III of the source statute. The words “that service for all purposes” are substituted for 10: 1036a (e) (last 11 words) and 34 : 4401(e) (last 11 *79 words). The words “upon attaining the age of sixty years” are omitted as surplusage.
While no legislative history is cited by either party to illuminate this point, it seems apparent to me that Congress, when it enacted the codification of Title III, was concerned only with non-regulars as was the intent of the original Act. This being true, the provisions of section 676 should be construed to pertain only to the earning of additional Title III retired pay credits while in a Reserve status.
The language of the Comptroller General in 38 Comp. Gen., supra, is in point and we believe correct. The pertinent language is as follows:
The answers stated above which involve the application of the provisions of 10 U.S.C. 676 have been given on the basis that the conditions of that section have been met. One of those conditions is that the member be retained on active duty or in one of certain reserve components “by order of the Secretary concerned.” It is our opinion that the statute was intended to have a limited application to permit additional service credits in those cases in which, because of some special qualification, ability or situation the Secretary of the service concerned orders a member’s retention. Hence, unless it reasonably may be concluded in any case that the member was “retained” under an order, instruction or regulation issued by the Secretary, service performed by the member after becoming qualified for retirement pay is not within the scope of that statute.
In the light of this construction, Congress did not give and indeed did not intend to give credit for service as a Regular since plaintiff was not retained pursuant to 10 U.S.C. § 676. Consequently, he was not entitled to increased pay benefits by reason of his service after date of qualification for retired pay under Title III. It follows that the inclusion of plaintiff’s Regular Army service subsequent to June 29,1948, in the computation of his Title III retired pay to August 31, 1959, was in error and an overpayment resulted. Defendant had the right to recover by periodic deductions from plaintiff’s retired pay and defendant is entitled to judgment on its counterclaim for the unpaid balance.
I would dismiss plaintiff’s petition and grant defendant judgment on its counterclaim.
*80 In accordance with the opinion of the court - and on a memorandum report of the commissioner as to the amount due thereunder, it was ordered on January 29, 1968, that judgment for the plaintiff be entered for $18,537.10.